THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RONALD H. CATS and SHANNON N. CATS,<br><br>Plaintiffs,<br><br>v.<br><br>MONACO RV, LLC, a Delaware Corporation; NAVISTAR, INC., a Delaware Corporation; DOES 1–10,<br><br>Defendants. | CASE NO. C15-1585-JCC<br><br>ORDER |

This matter comes before the Court on Defendant Navistar's motion for summary judgment (Dkt. No. 22); Plaintiffs Ronald and Shannon Cats' motion to amend complaint (Dkt. No. 25); Plaintiffs' motion to compel Navistar to comply with discovery (Dkt. No. 27); Plaintiffs' motion to compel Fed. R. Civ. P. 30(b)(6) depositions (Dkt. No. 29); Navistar's motion for a protective order (Dkt. No. 32); and Plaintiffs' motion to strike Docket Number 61 (Declaration of Patrick Nolan) and Docket Number 62 (Declaration of Andrew Gauen) (Dkt. No. 66). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and, for the reasons explained herein, GRANTS in part and DENIES in part Navistar's motion for summary judgment (Dkt. No. 22); GRANTS in part and DENIES in part Plaintiffs' motion to amend complaint (Dkt. No. 25); GRANTS Plaintiffs' motion to compel

discovery (Dkt. No. 27); GRANTS in part and DENIES in part Plaintiffs' motion to compel 30(b)(6) depositions (Dkt. No. 29); GRANTS in part and DENIES in part Navistar's motion for protective order (Dkt. No. 32); and DENIES Plaintiffs' motion to strike (Dkt. No. 66).

## I. BACKGROUND

This case arises out of the purchase of a Monaco Diplomat Recreational Vehicle ("Diplomat") by Plaintiffs Ronald and Shannon Cats from McMahon's RV in California on October 26, 2013. (Dkt. No. 42 at 2.) Plaintiffs are residents of Texas and Washington. (*Id.* at 6, 15.) McMahon's RV delivered the Diplomat to Plaintiffs in Arizona, and Plaintiffs drove it to their Texas home. (*Id.* at 6.) Defendant Monaco manufactured the Diplomat, using a MaxxForce engine manufactured by Defendant Navistar. (Dkt. No. 16 at 1.)

Less than a week after purchase, on October 31, 2013, the "Stop Engine" light illuminated and Plaintiffs had to admit the Diplomat for repairs caused by overheating. (*Id.* at 3.) The Diplomat was out of service until November 26, 2013. (*Id.* at 4.) Not long after, the Diplomat began leaking fluid from the engine compartment. (*Id.*) The Diplomat was in the shop for repairs from February 18, 2014 to March 7, 2014. (*Id.*) Again, overheating was the cause. (*Id.*) The Diplomat broke down once more on July 8, 2014 and was sent to a Navistar repair shop. (*Id.*; Dkt. No. 47-2 at 12.) It remained in the shop until August 15, 2014.[1] (Dkt. No. 16 at 4.)

In July 2015, the engine once again failed and Plaintiffs admitted the Diplomat for repairs at a Navistar MaxxForce engine repair shop in Everett, Washington on July 15, 2015. (Dkt. No. 42 at 7; Dkt. No. 47-1 at 93–95.) This repair replaced the advanced exhaust gas recirculation valve ("EGR") that was stuck open and causing the overheating issues (*Id.*), and was completed under Navistar's limited warranty. (Dkt. No. 22 at 3.) Following this repair, Plaintiffs stopped

---

[1] Plaintiffs provided different dates regarding the time the Diplomat spent in the shop and it is possible the Diplomat remained in the shop as late as November 13, 2014. (Dkt. No. 47-2 at 61.) Absent clarification from Plaintiffs, the Court will assume the Diplomat was out of service until August 15, 2014.

using the Diplomat and sought compensation from Defendants. (Dkt. No. 42 at 8.) Plaintiffs filed suit in King County Superior Court in August 2015. (Dkt. No. 1 at 1.) Defendants removed in October 2015. (*Id.*)

Navistar now moves for summary judgment on all claims asserted against it. (Dkt. No. 22.) Plaintiffs filed motions to amend their complaint (Dkt. No. 25), compel discovery (Dkt. No. 27), compel a Fed. R. Civ. P. 30(b)(6) deposition(s) (Dkt. No. 29), and strike two declarations in support of Navistar's summary judgment motion (Dkt. No. 66). Navistar also filed a motion for a protective order in response to Plaintiffs' motion to compel a 30(b)(6) deposition. (Dkt. No. 32.) Because the motions are interrelated, the Court will consider them together.

## II.     DISCUSSION

### A.     Plaintiffs' Motion to Amend the Complaint

Plaintiffs seek leave to amend their complaint to clarify prior facts and allegations and to add causes of action against both defendants. (Dkt. Nos. 25 and 26.) Both Monaco and Navistar oppose the amendments. (Dkt. Nos. 39 and 43.) Plaintiffs filed the motion to amend on August 4, 2016, more than one month before the close of discovery (Dkt. No. 14), and before expert discovery and the depositions of Monaco and Navistar's corporate witnesses. (Dkt. No. 53 at 1.) However, the motion also comes nearly one year after the filing of Plaintiffs' initial complaint. (Dkt. No. 1 at 1.)

The district court is afforded discretion to grant leave to amend and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The generosity in granting leave to amend is "to be applied with extreme liberality" as there is a strong presumption in favor of granting leave to amend a complaint. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003). Courts are to consider five factors in granting leave to amend a complaint: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the complaint has previously been amended. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

As will be discussed, Navistar has been less than forthcoming with its discovery responses, and therefore the Court finds no such factor discouraging amendment of Plaintiff's complaint to clarify factual allegations contained in Plaintiffs' proposed amended complaint (Dkt. No. 26 at 6–12). However, Plaintiffs' basis for adding seven causes of action, including state law claims from California, Texas, and Arizona (*Id.* at 15–23) stems from their own deposition testimony. (Dkt. No. 25 at 3–4.) While this may not rise to the level of bad faith, the fact that the Plaintiffs had the factual bases for additional causes of action in their possession certainly constitutes undue delay.

Additionally, many of the new causes of action are futile or based on speculation. "Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant leave to amend." *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). Plaintiffs first allege two California lemon law claims based on the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 et seq. (Dkt. No. 26 at 15–18.)  These claims cannot be sustained because the Act is limited expressly to goods sold in California. *Gusse v. Damon Corp.*, 470 F. Supp. 2d 1110, 1112 (C.D. Cal. 2007) (citing Cal. Civ. Code §§ 1792, 1792.1-3, 1792.6). Although Plaintiffs purchased the Diplomat from an RV dealer in California, the sale and delivery were completed in Arizona. (Dkt. No. 26 at 9, ¶ 4.2.) Under a virtually identical set of facts, the California Court of Appeals held that the Song-Beverly Act did not apply because the RV was delivered, and the sale consummated, in Nevada. *Davis v. Newmar Corp.*, 38 Cal. Rptr. 3d 690, 691 (Cal. Ct. App. 2006).

Plaintiffs also claim violations of Texas and Arizona lemon laws. (Dkt. No. 26 at 20–22.) The lemon law claims under Tex. Occ. Code § 2301 fail because Plaintiffs have not presented any evidence of written notice by mail to either defendant of the alleged defects, as required by Tex. Occ. Code § 2301.606(c)(1). The Arizona lemon laws do not apply to vehicles with a gross weight over 10,000 pounds. Ariz. Rev. Stat. § 44-1261(C). The Diplomat weighs nearly 35,000 pounds. (Dkt. No. 39 at 10.)

Finally, Plaintiffs' proposed new claims for misrepresentation and vicarious liability of McMahon's RV are based on speculation and devoid of specific factual allegations. (Dkt. No. 26 at 22–23.) The only remaining claim by Plaintiffs is for violation of California's Unfair Competition Law. (*Id.* at 18.) It is possible this claim is not futile, however, as previously stated, this claim is the result of undue delay.

Accordingly, the Court GRANTS in part and DENIES in part Plaintiffs' motion for leave to amend the complaint. The Court ORDERS that Plaintiffs are granted leave to amend the complaint only insofar as it pertains to clarifying factual allegations. Plaintiffs may not add additional causes of action.

### B.     Navistar's Motion for Summary Judgment

Navistar asks the Court to dismiss all claims against it, which include: (1) breach of warranty claims under the Uniform Commercial Code ("UCC"), (2) Magnuson-Moss Warranty Act ("MMWA") claims, (3) Washington state lemon law claims, (4) Washington state Consumer Protection Act ("CPA") claims, and (5) negligence claims. (Dkt. No. 22 at 7–20.)

The Court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making such a determination, the Court views the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248-49.

Navistar's overarching argument is that none of Plaintiffs' claims against it may be sustained because it provided only one warranty repair to the MaxxForce engine in Plaintiffs' Diplomat and privity is lacking between Plaintiffs and Navistar. Navistar argues that all of Plaintiffs' claims fail as a matter of law.

As a preliminary matter, Plaintiffs move to strike docket numbers sixty-one and sixty-

two, which are declarations in support of Navistar's motion for summary judgment. The decision to strike material from the pleadings is within the discretion of the trial court. *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000). Plaintiffs maintain that because the declarations contained information previously sought by them, it may not be used to supply evidence in a motion. (Dkt. No. 66 at 1); Fed. R. Civ. P. 37(c)(1). Plaintiffs' argument has some merit. However, because the declarations were not relevant to this Court's decision regarding the motion for summary judgment, and because the Court orders Navistar to comply with Plaintiffs' discovery requests, the failure is harmless. *Id.* The Court DENIES Plaintiffs' motion to strike declarations sixty-one and sixty-two. (Dkt. No. 66.)

### a. Plaintiffs' Breach of Warranty Claims under the UCC

Navistar first argues that in order to state a claim for breach of an express or implied warranty under Washington's adoption of the Uniform Commercial Code ("UCC") the goods must have either been purchased in Washington or bear an "appropriate relationship" to Washington. (Dkt. No. 22 at 15, citing Wash. Rev. Code § 62A.1-301.) Navistar treats as determinative that the Diplomat was not purchased in Washington. However § 62A.1-301 deals with the parties' ability to choose applicable law, not a prerequisite to bring suit. If the transaction bears an appropriate relationship to Washington, Washington's adoption of the UCC may apply. Although the Diplomat was not purchased in Washington, the fact that Plaintiffs drove the Diplomat to Washington and that Navistar's engine was repaired by a Navistar mechanic in Washington constitutes an appropriate relationship to Washington State. Navistar's first argument fails.

Navistar next argues that Plaintiffs were required to file pre-suit notice. (*Id.*) Navistar cites to Wash. Rev. Code § 62A.2-607(3)(a), which states that "[t]he buyer must within a reasonable amount of time after he or she discovers or should have discovered any breach notify the seller or be barred from any remedy." (*Id.*) However, this section pertains to a buyer's (here, Monaco's) knowledge of a defect prior to acceptance, and does not apply to downstream

purchasers such as Plaintiffs. *See* Rev. Code. Wash. § 62A.2-607, Washington Comments (2); UCC Comments 5 (stating that Plaintiffs need only "notify the seller than an injury has occurred"); *see also La Hue v. Coca Cola Bottling Co.*, 314 P.2d 421, 422 (1957) ("The ultimate consumer may, because of the breach of warranty, recover against the manufacturer . . . despite the lack of privity, without complying with the provisions of the uniform sales act relative to notice."). Regardless, viewed in the light most favorable to Plaintiffs, a jury could find that a Navistar mechanic twice performing work on their Diplomat satisfies the notice requirement.

Navistar next argues that Plaintiffs' breach of implied warranty claims under Wash. Rev. Code § 62A.2-314 fail due to a lack of privity between Navistar and Plaintiffs.[2] According to Navistar, Plaintiffs must have purchased the engine directly from Navistar in order for privity to lie. Navistar conflates horizontal privity, which is privity between the seller and immediate purchaser (applicable only to Wash. Rev. Code 62A.2-318), and vertical privity. *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.*, 831 P.2d 724, 729 (Wash. 1992). Vertical privity is "privity between a manufacturer and end users down the distribution chain," *id.*, and "controls warranty issues [] between a remote manufacturer and ultimate purchaser." *Id.* at 730; *see also Kadiak Fisheries Co. v. Murphy Diesel Co.*, 422 P.2d 496 (Wash. 1967). Because Plaintiffs are the ultimate purchasers of Navistar's engine, there is vertical privity between the two.

Finally, Navistar argues that Plaintiffs did not meet their burden in presenting evidence demonstrating an express warranty made by Navistar to Plaintiffs either in writing, orally, or through advertising. (Dkt. No. 22 at 17.) This Court agrees. Plaintiffs' contention that the declaration of one of Navistar's engineers in support of its motion for summary judgment (Dkt. No. 24 at ¶ 3), stating "Navistar designed, built and manufactured a MaxxForce 10 DT-570 405

---

[2] Navistar appears to argue in its subheading that privity is required—and also lacking—between Navistar and McMahon's RV. (Dkt. No. 22 at 16.) However, no argument is set forth beyond the heading and the Court will not consider it.

ORDER
PAGE - 7

1 horsepower engine for specific use in Monaco RVs," constituted an express warranty made to
2 Plaintiffs prior to their purchase is absurd. (Dkt. No. 42 at 19.) The Court hereby DENIES
3 Navistar's motion as to the implied warranty claims under the UCC, and GRANTS Navistar's
4 motion as to the express warranty claims under the UCC.

### b. Plaintiffs' Claims under the MMWA

Navistar next asks this Court to dismiss Plaintiffs' claims under the Magnusson-Moss Warranty Act ("MMWA") because (1) no implied warranties flow from Navistar to Plaintiffs due to a lack of privity; (2) there is no evidence of a breach of a warranty; (3) there are no current defects with the Diplomat; and (4) Plaintiffs did not give Navistar enough opportunities to repair any alleged defect. (Dkt. No. 22 at 8.) First, as to privity, the MMWA defines a supplier as "any person engaged in the business of making a consumer product directly or indirectly available to consumers." 15 U.S.C. § 2301(4). And as previously discussed, under Washington law,[3] there is privity between Navistar and Plaintiffs.

Second, Navistar maintains there is no evidence of a breach of warranty. At the very least, the MaxxForce engine manufactured by Navistar comes with an implied warranty of fitness for use in a vehicle. Wash. Rev. Code § 62A.2-314. Under this implied warranty, the Diplomat must be "fit for the ordinary purposes for which such goods are used." Wash. Rev. Code § 62A.2-314(2)(c). For a recreational vehicle, this would include driving it on the highway. Plaintiffs submitted evidence that the Diplomat was admitted to a repair shop at least four times and was out of service for a minimum of three months within the first 10,000 miles of ownership. There is sufficient evidence that Navistar breached its implied warranty of fitness.

Third, Navistar argues that Plaintiffs may not maintain their claim because it repaired the engine and the Diplomat is currently in working order, and that this satisfies Navistar's duty to cure the failure under 15 U.S.C. § 2310(e). Considering the mechanical troubles repeatedly

---

[3] 15 U.S.C. § 2301(7) defines an "implied warranty" as one "arising under State law."

encountered by Plaintiffs with their Diplomat—including troubles that did not necessarily result in shop-time—it is understandable that Plaintiffs would be reticent to continue driving the Diplomat, lest it break down a fifth time. Based on the facts already alleged, a jury could conclude that the MaxxForce engine is defective and that Navistar has sufficient opportunities to cure the defect, and this Court will not force Plaintiffs to drive their motor home until it breaks down again in order to survive summary judgment.

Finally, as to Navistar's argument that Plaintiffs did not give Navistar enough attempts to repair the defect, Navistar-sanctioned mechanics twice worked on the Diplomat. Although a single attempt does not meet the statutory threshold, a jury could conclude that two attempts was sufficient. *See* 15 U.S.C. § 2304(a)(4) (using plural "attempts"); *Temple v. Fleetwood Enterprises, Inc.*, 133 Fed. Appx. 254, 368 (6th Cir. 2005) ("In determining whether or not a seller is given a reasonable amount of time or a reasonable number of attempts to cure a defect, the Magnuson-Moss Act contemplates that a seller will be given at least two chances to remedy an alleged defect.").

The Court hereby DENIES Navistar's motion as to the MMWA claims.

### c. Plaintiffs' Claims under Washington's Lemon Laws

Navistar argues that Plaintiffs' claims under Washington's lemon laws, Wash. Rev. Code ch. 19.118, should be dismissed because Plaintiffs did not purchase the Diplomat in Washington state. (Dkt. No. 22 at 9.) The Court agrees. Under Wash. Rev. Code §§ 19.118.005, .010, and .021(12), the vehicle in question must have been purchased in this state. Because Plaintiffs purchased their Diplomat in California and delivered in Arizona, they have no basis for a claim under Washington's lemon laws.

The Court hereby GRANTS Navistar's motion to dismiss Plaintiffs' claim under Washington's lemon laws.

### d. Violations of Washington's Consumer Protection Act

Next, Navistar argues that Plaintiffs failed to state a prima facie claim under Washington's CPA. (Dkt. No. 22 at 12.) Under the CPA, a plaintiff must establish five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). Navistar contends that Plaintiffs failed to meet the first, third, and fourth elements. (Dkt. No. 22 at 12.)

Starting with an unfair act or deceptive practice, Plaintiffs allege that the MaxxForce engine was defective and if Navistar knew about it, that would constitute a deceptive practice. (Dkt. No. 26 at 8–9.) Navistar maintains that Plaintiffs have not come forward with any evidence to show that Navistar engaged in any sort of unfair or deceptive conduct. (*Id.*) However, this is more a result of Navistar's failure to comply with discovery requests than any shortfall of Plaintiffs. Navistar is correct that "an isolated breach of contract, warranty, or act of negligence does not ordinarily create a right of action under the CPA without more."[4] (Dkt. No. 22 at 13.) However, a defendant cannot refuse to provide discovery which may reveal an unfair or deceptive practice and then point to the plaintiff's lack of evidence on a motion for summary judgment. Here, if Navistar knowingly installed defective engines in Monaco RVs, especially when Navistar was the parent company of Monaco at the time it manufactured Plaintiffs' Diplomat, a jury could find that constitutes a deceptive practice.

As to the third element, the public has a strong interest in preventing manufacturers from knowingly installing defective products. Therefore, Navistar's argument that this does not affect the public interest also fails.

---

[4] Navistar cites to *Henery v. Robinson*, 834 P.2d 1091 (Wash. Ct. App. 1992) for the proposition that a single misrepresentation by a mobile home salesman did not constitute a deceptive act. (Dkt. No. 22 at 14.) That case is inapplicable here. Had Navistar complied with discovery requests regarding defects in it engine, the Court would be better suited to determine whether a jury could find Navistar acted unfairly or deceptively.

Finally, Navistar claims that Plaintiffs have not demonstrated any injury. Spending roughly $250,000 on a vehicle that immediately and repeatedly broke down—sometimes on the freeway—and spent at least three months in the repair shop during the first 10,000 miles of use constitutes a real and articulated injury. This is especially true if it is the result of Navistar knowingly installing a defective engine. Navistar's objections to Plaintiffs' CPA claim fail.

The Court DENIES Navistar's motion to dismiss Plaintiffs' CPA claims.

e.  **Plaintiffs' Negligence Claims**

Finally, Navistar maintains that Plaintiffs' negligence claims cannot proceed because they have not identified a duty owed or a breach. (Dkt. No. 22 at 19.) In order to prevail on a negligence claim, a plaintiff must demonstrate (1) that a duty was owed to the plaintiff; (2) there was a breach of that duty; (3) that plaintiff was harmed by the breach; and (4) that the breach was the proximate cause of the harm. *Jackson v. City of Seattle*, 244 P.3d 425, 428 (Wash. Ct. App. 2010).

Navistar frames Plaintiffs' formulation of the duty as providing a product that would never need adjustment or repair. (*Id.*) Navistar is correct that it would not have such a duty, however it does have a duty not to knowingly install defective engines in vehicles. If Navistar knowingly installed defective engines in Monaco RVs, then duty, breach, causation, and harm would all be met.[5] Had Navistar fully complied with discovery obligations, the Court would have a better idea as to whether, viewed in the light most favorable to the plaintiffs, a jury could conclude that Navistar knowingly manufactured and sold defective engines. Because it did not, the Court finds Navistar's argument that Plaintiffs failed to produce any evidence on this unavailing.

---

[5] Navistar argues in its reply supporting summary judgment that Plaintiffs' expert and his declaration should be excluded because it is based on assumptions and without factual support. (Dkt. No. 60 at 4–7.) Although the Court believes Mr. Merrion should be more specific as to what, exactly, he reviewed in coming to his conclusions, it also notes that various requests for production pertaining to the design and manufacture of Navistar's MaxxForce engine were not provided to Plaintiffs. Navistar cannot refuse to provide discovery on which Plaintiffs' expert may need to rely and then claim he has insufficient facts on which to base his opinion.

ORDER
PAGE - 11

The Court hereby DENIES Navistar's motion to dismiss Plaintiffs' negligence claim.

**C.     Discovery Motions**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* The Court "may order discovery of any matter relevant to the subject matter involved." *Id.*

Discovery has been highly contested between the parties. Plaintiffs filed a motion to compel Navistar to comply with its discovery obligations (Dkt. No. 27) and a motion to compel Navistar to provide 30(b)(6) witnesses for deposition (Dkt. No. 29). In response to Plaintiffs' motion to compel 30(b)(6) witnesses, Navistar filed a motion for a protective order, requesting that (1) the Court stay corporate depositions until after its summary judgment motion is decided; (2) any depositions that are ordered take place at its headquarters in Chicago, Illinois; and (3) the Court limit the scope of the twenty-two topics included in Plaintiffs' notice. (Dkt. No. 32 at 1–2.)

Turning first to Plaintiffs' motions to compel discovery, Plaintiffs request that this Court order Navistar to respond to multiple requests for production, specifically requests numbered 3, 4, 8–10, 12, 18–21, 23, 27, and 28. (Dkt. No. 27 at 5–9.) Navistar maintains that what it has already produced and its objections justifying a lack of production are sufficient to satisfy its discovery obligations. However, Navistar has not given this Court a solid foundation to trust that it is faithfully complying with its discovery obligations. For example, in Plaintiffs' request for production No. 10, they asked for documents relating to "any complaints made by any owner of a MaxxForce engine of the kind used on the Diplomat during the years 2010 to the present." (Dkt. No. 28 at 23.) Navistar at first objected and later complied by providing one Florida case. (*Id.* at 33; Dkt. No. 27 at 7.) Two more cases were produced in response more than eight months later. (Dkt. No. 56 at 3.) However, in its own reply in support of summary judgment, Navistar

cites *Ross Neely Systems, Inc. v. Navistar, Inc., et al.*, 2015 WL 1565702 (N.D. Texas). (Dkt. No. 60 at 6.) The cite in the briefing was to a specific docket number from that case, which leads the Court to believe that Navistar and its counsel are well aware of, and have ready access to, all litigation matters relating to Navistar and its MaxxForce engines. A quick search of orders in *Ross Neely* led this Court to the multidistrict litigation case, *In re: Navistar Maxxforce Engines Marketing, Sales Practices and Products Liability Litigation*, 67 F. Supp. 3d 1382 (J.P.M.L. 2014), consisting of fourteen actions in eight districts involving "claims that the Advanced Exhaust Gas Recirculation (EGR) emission control system developed by Navistar for its MaxxForce truck engines is defective, resulting in repeated engine failures and frequent repairs." *Id.* at 1383. That is virtually the same claim alleged by Plaintiffs.

Additionally, Navistar maintains that only one Navistar-sanctioned mechanic worked on Plaintiffs' Diplomat, and counsel for Navistar represented that "Navistar has no record of any SanTex work, if it is an authorized service representative, on the engine." (Dkt. Nos. 42 at 12 and 47-2 at 102.) To the contrary, a copy—provided by Monaco—of the SanTex repair invoice shows on the first page in large, bold letters "Repair Management by Navistar." (Dkt. 47-2 at 12.)

As to its objection to Plaintiffs' proposed 30(b)(6) topics, Navistar claimed "there have been no operational employees at Navistar with RV knowledge since May 15, 2013," (Dkt. No. 36-1 at 18), yet submitted a declaration in support of summary judgment from Patrick Nolan, a senior engineer at Navistar, who made numerous statements based on information Navistar claimed was unavailable. (Dkt. No. 61 at 2–6.) Navistar also claimed that it had no documents relating to its decision to discontinue its MaxxForce 10 engine, however Mr. Nolan stated that it was "discontinued for business reasons." (*Id.* at 4.) This Court finds it difficult to believe that a corporation's decision to terminate production of the engine would be made devoid of any documentation and only exist in the memory of a few employees.

Accordingly, the Court GRANTS Plaintiffs' motion to compel discovery (Dkt. No. 27) in its entirety. To the extent the requests have not already been complied with since the filing of the motion, the Court ORDERS Navistar to comply with the requests for production within 14 days from the date of this order. The Court also GRANTS in part Plaintiffs' motion to compel a 30(b)(6) deposition(s) (Dkt. No. 29) and ORDERS Navistar to produce a witness or witnesses capable of answering questions on topics 7, 8, 10, and 12–21. (Dkt. No. 29 at 6–7.) The Court GRANTS in part Navistar's motion for a protective order (Dkt. No. 32) as to the questions that pertain to speculative or conspiratorial allegations relating to McMahon's RV, or other irrelevant topics, specifically topics 1–6, 9, and 11. (Dkt. No. 29 at 6–7.) The Court further ORDERS that the depositions shall take place at Navistar's headquarters in Chicago, Illinois. Navistar's request that this Court stay the depositions until it decides the summary judgment motion is DISMISSED as moot.

### III. CONCLUSION

For the foregoing reasons, Defendant Navistar's motion for summary judgment (Dkt. No. 22) is DENIED IN PART and GRANTED IN PART. It is DENIED as to (1) breach of warranty under the Uniform Commercial Code; (2) claims under the Magnuson-Moss Warranty Act; (3) claims under the Washington Consumer Protection Act; and (4) Plaintiffs' negligence claim, and GRANTED as to Plaintiffs' Washington lemon law claim under Wash. Rev. Code. ch. 19.118.

Plaintiffs' motion to amend (Dkt. No. 25) is GRANTED as to clarifying factual allegations, and DENIED as to adding additional claims.

Plaintiffs' motion to compel Navistar to comply with discovery obligations (Dkt. No. 27) is GRANTED. The Court ORDERS Navistar to comply with the requests for production within 14 days from the date of this order.

Plaintiffs' motion to compel a 30(b)(6) deposition(s) (Dkt. No. 29) is GRANTED IN PART. The Court ORDERS Navistar to produce a witness or witnesses capable of answering questions on topics 7, 8, 10, and 12–21. (Dkt. No. 29 at 6–7.)

1    Navistar's motion for a protective order (Dkt. No. 32) is GRANTED IN PART as to the
2 topics that pertain to speculative or conspiratorial allegations concerning McMahon's RV, or
3 other irrelevant topics, namely topics 1–6, 9, and 11. (Dkt. No. 29 at 6–7.) The Court further
4 ORDERS that the depositions shall take place at Navistar's headquarters in Chicago, Illinois.

5    Plaintiffs' motion to strike Docket Number 61 and Docket Number 62 (Dkt. No. 66) is
6 DENIED.

   DATED this 22nd day of September 2016.

*[signature]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE